IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBBIE A NEECE,                    )
                                   )
          Plaintiff,               )  Civil No. 03-6311-AS
                                   )
     vs.                           )
                                   )
JO ANNE B. BARNHART,               ) OPINION AND ORDER
Commissioner of Social Security,)
                                   )
          Defendant.               )
_____)
Timothy P. Baxter
Lane County Law and Advocacy Center
376 East 11the Avenue
Eugene, OR 97401
     Attorney for plaintiff

Stephanie R. Martz
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
     Attorney for defendant


1 - OPINION AND ORDER                                    (LB)

ASHMANSKAS, Judge:

Claimant, Debbie Neece, brings this action pursuant to the Social Security Act (Act), 42 U.S.C. §§405(g) and 1383(c)(3), seeking judicial review of the Social Security Commissioner's (Commissioner) final decision. The Commissioner denied Neece's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons set forth below, the Commissioner's decision is reversed and remanded for payment of benefits.

## PROCEDURAL BACKGROUND

Neece filed an application for DIB and SSI benefits on December 5, 2000, with a protective filing date of November 28, 2000, alleging disability beginning November 13, 1997, due to post traumatic stress disorder, fibromyalgia, chronic joint dysfunction, obsessive compulsive disorder and carpal tunnel syndrome. Her applications were denied initially and on reconsideration. On February 24, 2003, after a timely request for a hearing, Neece appeared and testified before an administrative law judge (ALJ). Neece was represented by counsel, Timothy Baxter. Kay Hartgrave, a vocational expert (VE), also appeared and testified at the hearing. Charles Abel, Neece's therapist, testified by telephone.

The ALJ considered the testimony and all other evidence of record and on April 19, 2003, issued a decision finding Neece was

not disabled within the meaning of the Act at any time through the date of the decision and, therefore, not entitled to DIB and SSI benefits.  <u>See</u> 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). This became the final decision of the Commissioner when the Appeals Council declined to review the ALJ's decision.  20 C.F.R. §§ 404.981, 416.1472, 422.210.

## STATEMENT OF FACTS

The medical records submitted in this case accurately set forth Neece's medical history as it relates to her claim for benefits.  The court has carefully reviewed the extensive medical records submitted here, and the parties are familiar with the records.  In addition, the Commissioner stipulates to the ALJ's summary of the medical and testimonial evidence.  Accordingly, the details of those medical records will not be recounted here.

At the time of the hearing Neece was 47 years old; had completed the eighth grade; and had past relevant work as an office manager, cashier, bartender, waitress, collector, kennel person and janitor.  Neece alleged disability since November 13, 1997, due to post traumatic stress disorder (PTSD), fibromyalgia, chronic joint dysfunction, obsessive compulsive disorder and carpal tunnel syndrome.  She has not performed substantial gainful activity since her alleged disability date.

At the hearing, Neece testified on her own behalf.  She provided testimony regarding her limitations, her daily

activities and her past work experiences, including her difficulties in dealing with people in the workplace. Specifically, Neece's most recent employment was by Sears as a senior collector. Neece had been absent from work for some time due to depression, but had visited the office on November 13, 1997. While there, she told her co-workers that she dreamed of bombing one of them and said, "Let's see what kind of bombs are going to be set this time."

Based on her statements, Sears terminated her, and sought a restraining order. Police picked her up at her home with a petition for a 24-hour psychiatric hold. Neece was taken to McKennan Hospital in Sioux Falls, South Dakota. While there, she reported that she had been seeing Dr. Gelernter for depression since mid-October and had been taking 10 mg of Prozac per day, which was changed to 50 mg of Zoloft per day while she was being held at McKennan. Neece reported that her depression was job-related and that she did not get along well with her co-workers.

Neece worked as a cashier/teller at an employer called "Easy Money." She was terminated from that job after two or three months when she was accused of stealing $5,000, though she was never charged with any crime related to that accusation. Neece worked at the Coastal Animal Clinic cleaning out kennels and bathing animals. She left that job because she could not lift the larger animals. She testified that she had difficulty with

the people there.  Finally, Neece worked as a part-time janitor for three months at the Mapleton Post Office.  She testified that she left that job because she couldn't lift the mop bucket to fill it with water and "couldn't deal with people," specifically the postmaster and people coming in from the post office.

On a typical day Neece gets up, makes coffee, watches television and then does some chores, such as taking care of her cats, picking up and putting dishes in the dishwasher.  She testified that it hurts to bend and pick things up, but she does it anyway.  Todd Beeghly, Neece's significant other, helps her with some chores that she cannot perform.  For example, she cannot make a fire in the wood stove because the wood is too heavy.  Beeghly also vacuums, takes the trash out, helps make the bed and sometimes moves wet clothes from the washer to the dryer when Neece is unable to do so.

Neece has a greenhouse and likes to garden.  She testified that Beeghly and her son, Eric, built elevated flower beds so that she does not have to bend to tend them, which makes her back, hips and knees ache.  She drives when necessary and goes to the grocery store approximately every two weeks.  She regularly sees Beeghly, as he lives with her, and his brother, Andy, who lives next door.  She also sees Eric and his family at least every weekend.  They come to visit her, as she sometimes does not

like to go to other peoples' homes.  She has a friend, Sherry, who she sees once or twice a month.

Charles Adel, a Qualified Mental Health Professional and Neece's treating therapist, testified that Neece is unable to work because she lacks job skills, is unable to manage stress and has no coping skills. Adel also testified that Neece has a dependent personality which causes her to seek others to care for her, and to seek "opinion support emotionally" when she is threatened.  According tO Adel, the result is histrionics and manipulation by Neece to obtain the support of her care givers. Adel testified that it is a survival mechanism, "not deliberately calculating a particular behavior for a particular effect."  Adel further testified that the techniques he uses as a counselor to limit this behavior -- to be firm and confrontational -- would not work for a supervisor in an employment setting.

Clinically, Adel diagnosed Neece as suffering from:  (1) PTSD, by severe physical and sexual abuse; (2) dependent personality disorder; (3)  obsessive-compulsive personality disorder manifesting through obsessive rumination; and (4) major depressive disorder for which she is being treated with Zoloft. Adel testified that Neece's previous mental health provider, Dr. Climan, as well as Neece's primary care doctor, Dr. Peter Howinson, concurred in the diagnosis.

Kay Hartgrave, the VE, testified that Neece's past relevant work included: (1) three months work at ten hours per week as a janitor, which is classified unskilled work up to a medium level; (2) short-term, part-time work as a kennel cleaner, which was unskilled, light to medium range, with her not being able to perform the medium level; (3) two and one-half months as a teller, which was sedentary; (4) two years as a collector, which was skilled and sedentary; (5) nine months as a waitress, which is semi-skilled, light duty; (6) bartender, which is semi-skilled, up to medium duty; and (7) eight years as an office manager, which is skilled and sedentary to light duty.

The ALJ asked Hartgrave to consider a hypothetical individual of Neece's age, education, background and training who would have the capacity to do light exertional work and has a mild limitation on concentration, pace and persistence and social interaction in particular with co-workers, supervisors, and the public. Given those assumptions, the ALJ asked whether the hypothetical individual would be able to do any of Neece's past relevant work. Hartgrave testified that the hypothetical individual would be able to work as a cashier, collector, waitress or bartender. Given the same assumptions but the capacity to perform only sedentary, rather than light work, Hartgrave testified that the hypothetical individual would be able to work as a cashier or collector. For a third

hypothetical, the ALJ asked Hartgrave to assume that the individual could perform in the light exertional category, but was moderately, rather than mildly, limited in concentration, pace, persistence and social interaction with co-workers, supervisors and the public. With these assumptions, Hartgrave opined that the hypothetical individual could perform none of Neece's past relevant work. She could however, identify other representative jobs in the national economy that such an individual could perform, including labeler or marker, server of soft goods and office helper. The ALJ posed a fourth hypothetical in which the individual could only perform sedentary, as opposed to light duty work, and was moderately limited in concentration, pace, persistence and social interaction with co-workers, supervisors and the public. Hartgrave identified the following jobs that such an individual could perform: office helper and table worker.

Hartgrave was unable to identify any jobs for a fifth hypothetical individual, one who has more than moderate limitations in concentration, pace, persistence and social interaction with co-workers, supervisors and the public. She also testified she could identify no jobs that could be performed by any individual with more than moderate impairments in either concentration, pace, persistence _or_ social interaction with co-workers, supervisors and the public. The ALJ had defined "more

that moderate" as limited to 33 percent of the day.  With
reference to a Mental Residual Functional Capacity Assessment
performed by Dr. Carol Rathkey, a DDS Disability Examiner, which
states that Neece "would do best in an environment with
supportive supervision," Hartgrave testified "[t]hat's not common
in the competitive workplace."

The ALJ found that Neece has not engaged in substantial
gainful activity since November 13, 1997, the date of alleged
onset of disability; the medical evidence established that she
has one or more severe impairments, but she does not have an
impairment or combination of impairments which meet or equal the
criteria of any of the impairments listed in Appendix 1, Subpart
P, Regulations No. 4; Neece's allegations regarding her
limitations are not fully credible; and she is unable to return
to any of her past relevant work, but could perform light work
with moderate limitations as to concentration, persistence, pace
and social interaction.  Accordingly, the ALJ found that Neece is
not disabled under the Act and eligible for DIB and SSI because
she retained the residual functional capacity to perform other
work.

**STANDARD OF REVIEW**

This court must affirm the Secretary's decision if it is
based on proper legal standards and the findings are supported by
substantial evidence in the record.  <u>Hammock v. Bowen</u>, 879 F.2d

498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

To be found disabled under the Act, an individual must have a medically determinable physical or mental impairment of such severity that he or she is not only unable to do his or her previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 20 C.F.R. §§ 404.1520, 416.920.

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process
for determining whether a person is disabled.  <u>Bowen v. Yuckert</u>,
482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920.  First
the Secretary determines whether a claimant is engaged in
"substantial gainful activity."  If so, the claimant is not
disabled.  <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b),
416.920(b).

In step two the Secretary determines whether the claimant
has a "medically severe impairment or combination of
impairments." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§
404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three the Secretary determines whether the
impairment meets or equals "one of a number of listed impairments
that the Secretary acknowledges are so severe as to preclude
substantial gainful activity."  <u>Id</u>.; <u>see</u> 20 C.F.R. §§
404.1520(d), 416.920(d).  If so, the claimant is conclusively
presumed disabled; if not, the Secretary proceeds to step four.
<u>Yuckert</u>, 482 U.S. at 141.

In step four the Secretary determines whether the claimant
can still perform "past relevant work."  20 C.F.R. §§
404.1520(e), 416.920(e).  If the claimant can work, she is not
disabled.  If she cannot perform past relevant work, the burden
shifts to the Secretary.  In step five, the Secretary must
establish that the claimant can perform other work in the

national economy.  <u>Yuckert</u>, 482 U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Secretary meets this burden, then claimant is deemed not disabled.  20 C.F.R. §§ 404.1566, 416.966.

### DISCUSSION

Neece contends that the decision of the ALJ was not based on substantial evidence as required by 42 U.S.C. § 405(g), and the ALJ erred as a matter of law in denying her claims.  The Commissioner concedes error by the ALJ in developing the record and seeks a remand.  The Commissioner acknowledges that outstanding medical and vocational issues remain to be resolved at step five before awarding or denying benefits.

Specifically, the Commissioner states that the ALJ's decision is deficient because he failed to explain the weight given to the opinions of William McConchie, Ph.D., an examining psychologist, Virginia Climan, Ph.D., a treating psychologist, and Carol Rathkey, M.D., the DDS Disability Examiner.  The Commissioner recognizes that the ALJ also must fully address Adel's testimony and reconsider Neece's subjective complaints. Finally, the Commissioner allows that the ALJ must consult with the VE to clarify the effects of any assessed limitations on the occupational base.

While the parties agree the ALJ's decision is legally deficient and must be remanded, they dispute whether the remand

should be for further administrative proceedings or an award of benefits. Neece insists that once her evidence is credited as true, the record establishes that she was disabled during the relevant period and further administrative hearings would be futile. Conversely, the Commissioner insists that there are unresolved issues and the record does not require a finding of disability. As such, the matter should be remanded for further proceedings in order for the ALJ to develop the record completely.

The court will consider the grounds for error asserted by the parties to determine the appropriate remedy. See, e.g., Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9ᵗʰ Cir. 2003)(remand for further proceedings rather than for award of benefits is proper where outstanding issues remain). If the court determines that: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited, the court will remand the case for an award of benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9ᵗʰ Cir. 1996).

There is no dispute that the ALJ failed to give legally sufficient reasons for rejecting certain medical evidence and Neece's testimony. In addition, the ALJ failed to clarify

whether Neece's limitations would impact available jobs. Accordingly, the dispute now centers on the second and third factors set forth in <u>Smolen</u>. As a practical matter, the Ninth Circuit views the three-part test set forth in <u>Smolen</u> as a two-part inquiry in which the third prong is a subcategory of the second. <u>See</u>, <u>e.g.</u>, <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000). Namely, if the ALJ were not "required to find the claimant disabled" upon crediting the evidence, then this certainly would constitute an "outstanding issue [ ] that must be resolved before a determination of disability [could] be made." <u>Smolen</u>, 80 F.3d at 1292. Below, the court will consider the medical and testimonial evidence to determine whether outstanding issues remain or whether Neece can be found disabled on the record before the court.

## I.   Medical Testimony

### A.   William McConchie, Ph.D

Dr. McConchie, examining physician, evaluated  Neece on April 30, 2001, pursuant to a referral by Disability Determination Services.  Dr. McConchie was requested to determine Neece's eligibility for benefits with a special request to clarify possible symptoms of PTSD and poor concentration and memory problems.  In response, Dr. McConchie diagnosed Neece with PTSD based on an abusive childhood and adjustment disorder with

mixed anxiety and depression, chronic.  Dr. McConchie assessed

Neece's level of functioning as follows:

> [Neece] has **mild impairment** in her ability to comprehend job
> duties secondary to occasionally poor concentration
> secondary to anxiety and depression.  She appears to have
> **moderate impairment** in her ability to do mistake-free duty
> performance and work with adequate productivity  due to
> anxiety and depression.  She appears to have **moderate**
> **impairment** in her ability to maintain constructive
> relationships with supervisors because of a sensitivity to
> rejection by persons in positions of authority.  She appears
> to have **moderate impairment** in her ability to maintain
> constructive relationships with fellow workers and customers
> because of anxiety and depression.  She tends to get quite
> emotional over little things.[1]

(Emphasis added).

The parties agree that the ALJ did not understand the term

"moderate impairment" as it was intended by Dr. McConchie,

despite the fact that the definition was set forth in Dr.

McConchie's report.  The Commissioner argues that a remand is

necessary to permit the ALJ to consider Dr. McConchie's

assessment in light of Dr. McConchie's definition of "moderate".

In any event, the Commission maintains that Dr. McConchie's

opinion does not establish disability *per se*.

---

[1]     Mild impairment is defined as "[p]sychologically-based
problems that are likely to cause an employer or supervisor in a
normal, simple job on the open job market to speak to the person
occasionally to remind him/her to perform better."  Moderate
impairment is defined as "[p]sychologically-based problems that
are likely to cause an employer to warn the employee that if
behavior does not improve, dismissal is imminent."

**B.    Virginia Climan, Ph.D**

Neece was seen by Virginia Climan, Ph.D. (fka Virginia
Boyack), a licensed clinical social worker, nineteen times
between December 13, 2000, and June 5, 2001, with each session
lasting approximately two hours.  In December 2000, Dr. Climan
diagnosed Neece with PTSD, obsessive compulsive disorder, and
major depressive disorder, single episode, severe without
psychotic features.  Dr. Climan determined Neece's Global
Assessment of Functioning to be at 45.[2]

On June 7, 2001, at the conclusion of Dr. Climan's treatment
of Neece, Dr. Climan set forth her assessment of Neece in a
letter written to Social Security.  In that letter, Dr. Climan
stated, in part:

> **It is my opinion that [Neece] is unable to return to any
> work at this time due to the severity of her impairments.**
> Her limitations are severe enough to prevent her from
> concentration on a task for any period of time.  Her mood
> and emotions are unstable at this time (medications are
> assisting to some degree, however, she has not been on them
> for a long enough period to ascertain remission of her
> symptoms).  Her pattern of sleep is such that she is

---

[2]     The GAF is the clinician's judgment of the individual's
overall level of functioning, but it does not include impairment
and functioning due to physical or environmental limitations.
<u>Diagnostic Statistical Manual of Mental Disorders</u>, 32 (4th ed.
2000).  A score of 41-50 indicates "serious symptoms (e.g.,
suicidal ideation, severe obsessional rituals, frequent
shoplifting) OR any serious impairment in social, occupational or
school functioning (e.g., no friends, unable to keep a job)."
(emphasis omitted).  <u>Id</u>. at 34.  A rating of 55 is in the middle
of the category which describes moderate symptoms or moderate
difficulty in social, occupational, or social functioning.  <u>Id</u>.

constantly tired and anxious (again, the medication may
assist with this over time).  She has not had enough time to
process her past trauma including an abusive marriage,
alienation by one of her daughters, a history of sexual
abuse prior to her marriage, and the suspicious death of her
mother.

(Emphasis added).  The Commissioner urges the court to remand for

further proceedings to determine the effect of the medications,

the expected duration of Neece's symptoms and whether Neece could

perform simple repetitive tasks.

### C.   Charles Adel

Following Dr. Climan's departure, Neece continued her

counseling at Peacehealth Counseling Services with Adel.  Between

September 10, 2001, and January 17, 2003, Neece was seen by Adel

forty times for counseling, in addition to a number of impromptu

telephone sessions for the purpose of crisis intervention.

During his initial session with Neece, on September 10,

2001, Adel noted, in part, the following:

[Neece] presents with extreme motor agitation.  she
sometimes is ritualistically preoccupied with obsessions and
compulsions and has been for years.  She is cleaning the
house redundantly and double checking doors, washing hands
very time she touches anything.  She believes there are
germs. . . .  There is a histrionic, perhaps hysterical
feature to her personality.  She moves and rocks a lot and
has some magical beliefs about what to worry about and what
not to worry about.

One year later, in a report dated September 10, 2002, Adel

stated that Neece suffered from PTSD, chronic depress and

obsessive compulsive disorder.  Moreover, he opined that "[s]ome

of these are in remission and improvement has been shown in the

past year with continued treatment for the short run, successful termination is possible within about six months." Adel assessed Neece's GAF at 50. It is noteworthy that this report by Adel, in September of 2002, is the most hopeful outlook any treating source was able to attribute to Neece's condition.

Unfortunately, over time, Adel's optimism did not prove to be warranted. Specifically, Adel testified before the ALJ that he recalled at one point noting in Neece's file that "successful termination of therapy was possible within about six months." Despite that statement, he continued to see her after six months and currently believes that her mental problems render her unemployable. (Coincidentally, Adel's testimony at Neece's disability determination hearing came almost exactly six months after his aspiring prognosis.) Specifically, he testified:

> A. There are several reasons I think that she is well beyond the times and not vocationally rehabilitated--rehabilitative. **I believe that she has virtually no skills in the modern world as applicable. I don't [think] she can operate on a regular time schedule. I don't believe she could withstand constructive criticism or assignments under pressure. Frankly, I believe that she probably doesn't have the most primitive computer or even cash register skills that I am aware of.**
>
> Q. Okay.
>
> A. I've seen her function at a maturity level that defeats the purpose of continuing employment.
>
> Q. Could you be a little more specific in terms of the . . . .

A. **Yes, she has no coping skills with the stress of the marketplace.** She reacts highly emotionally almost histrionic to any performance, pressure or task completion when -- I've given her written assignments. She showed frustration at a very early level of written assignments and then simply said she couldn't do it. Regardless how much we persevered to get her on task completion, we've been unable to accomplish it. She usually regresses under performance pressure. I can't see that going away in the near future.

(Emphasis added).

In October 2002, Adel made the following notes after two separate sessions with Neece:

**She is very ill**, has a Disability pending and is trying her best to reintegrate into society. There are a lot of social anxieties, a lot of PTSD from massive physical and sexual abuse . . . . I figure in **six months or a year she might have it**; right now she is not ready to go to work, but I have seen positive gains.

It is hard to deal with [Neece]. . . . This highly dependant emotionally labile woman makes progress in very small gains. . . . She ended on a pretty positive note though **you don't win them all.**

(Emphasis added).

In her motion to remand, the Commissioner simply states that remand is necessary so "the ALJ will fully address Mr Adel's testimony . . . ." and "re-evaluate . . . Adel's testimony."

## II. Neece's Testimony

In response to questions from the ALJ, Neece testified that a combination of mental and physical issues prevent her from working, with the mental problems being the primary cause. Physically, she is in pain, while mentally, she is scared of

anyone who can exercise control over her life.  Neece relies on
Beeghly's income for support.

Neece testified that she has pain all over her body, and
that her neck, shoulders, lower back and hips hurt worse than
other parts of her body.  To address her pain, Neece cries, uses
heat packs, and lies down for approximately one and one-half
hours per day.  She previously received physical therapy for the
pain, but that is no longer covered by the Oregon Health Plan
(OHP).  She receives counseling from Adel but that also was to be
discontinued after March 1, 2003, because it was no longer
covered under the OHP.

Neece testified that she has trouble sleeping, sometimes
stays in bed for days at a time and needs to be reminded about
personal hygiene, such as when to shower, by Beeghly.  Neece has
a certification to use medical marijuana and smoked it the day
before the hearing.  In addition, she mixes it in tea ten to
twelve times a week to address stomach problems stemming from her
medication.

Neece also testified that she is easily overwhelmed, which
can cause her to stay in bed sometimes for two to three days at a
time.  She testified that there are memories that replay in her
mind, such as molestation by her grandfather, abuse by her
husband, and being accused of theft at her job in 1997.  She

testified that she worries about many things including her cats, her plants, and her social security claim.

Again, the Commissioner concedes that the ALJ did not adequately consider Neece's testimony.[3]  In her motion, the Commissioner states simply that remand is necessary so that "the ALJ will . . . reconsider Plaintiff's subjective complaints" and "re-evaluate the plaintiff's testimony."

### III. Vocational Expert Testimony

In May 2001, Neece was evaluated by Dr. Carol Rathkey. Following her evaluation, Dr. Rathkey submitted a Mental Residual Functional Capacity Assessment that included the following conclusions:

> A.  Cl has the ability to understand and remember short, simple instructions.  B.  CL would do best in a work environment with little co-worker contact.  C.  CL's symptoms of anxiety and depression impairs her ability to maintain a constructive relationship with supervisors.  **Cl would be best in an environment with supportive supervision**.

---

[3]     In rejecting Neece's testimony, the ALJ stated only:

> I find her complaints are not fully credible.  Her current therapist Charles Adel noted that she has a very histrionic presentation, and the ability to turn it on and off [].  This was noted at the hearing also.

An ALJ must provide "clear and convincing" reasons for rejecting a claimant's testimony if the claimant first produces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of pain or other symptoms. Smolen, 80 F.3d at 1281-1282.  Clearly, the ALJ did not meet that burden here.

D.  Cl has the ability to be aware of normal hazards in the
        work place and take appropriate precautions.

(Emphasis added).

        Upon considering Dr. Rathkey's conclusion that Neece would

be at her best in a position with "supportive supervision",

Hartgrave testified as follows:

        **That's not common in the competitive workplace.**  I mean
        supported supervision perhaps means not close supervision
        that you're able to be given direction and instructions and
        then left to your own to do it without a lot of close
        supervision which often times makes workers, you know, a
        little anxious -- a little more anxious than normal.
        However, the jobs out there today -- once the interview
        process is going on and the hiring and the probation period
        is outlined I mean a person pretty well knows where they
        stand with that employer to get through the probation period
        and supervision -- there's a period of time and then once
        that period of training or mentoring or monitoring is over
        you're pretty much left to your own and they're going to
        evaluate in a few months and that's kind of the way the
        competitive workplace is.  **I mean it's -- there's not a lot
        of gray there so I would say that supported supervision --
        that would almost mean a work environment whereby they've
        been told of some problems and they're willing to work with
        them and that takes us out of the competitive realm.**

(Emphasis added).

        The Commissioner argues that the term "out of the

competitive realm" does not mean "all" employment is precluded

and, thus, a remand is necessary for the ALJ to further develop

whether this limitation would impact all jobs.

## IV.  Award of Benefits v. Additional Proceedings

        The court is satisfied, based on the record before it, that

Neece is disable and entitled to a remand for payment of

benefits. Contrary to the Commissioner's assertions, there is no
need for the ALJ to further develop the record. Nor should the
ALJ be offered an additional opportunity to refine his reasons
for rejecting the evidence, thereby, causing further delay for a
deserving claimant such as Neece. See, e.g., Harman, 211 F.3d at
1179. Moreover, even assuming there is evidence in the record
upon which the ALJ might have articulated for rejecting the
medical evidence and the testimony of Neece, remand for payment
of benefits remains the proper remedy. See id. at 1178-1179
(emphasis added).

Indeed, the court is struck in this case by the consistent
(over time) and the unwavering medical and testimonial evidence
that Neece's limitations render her unable to work. Following is
a sample of the uncontroverted evidence of record concerning
Neece's level of functioning:

- Dr. McConchie determined that Neece's suffered moderate
  impairments (psychologically-based problems that are
  likely to cause an employer to warn the employee that
  if behavior does not improve, dismissal is imminent) in
  her ability to do mistake-free duty performance and
  work with adequate productivity due to anxiety and
  depression; to maintain constructive relationships with
  supervisors because of a sensitivity to rejection by
  persons in positions of authority; and, to maintain
  constructive relationships with fellow workers and
  customers because of anxiety and depression;

- Dr. Climan concluded that Neece was unable to return to
  any work at this time due to the severity of her
  impairments;

- Adel clearly stated that Neece has virtually no skills
  in the modern world; she is unable to operate on a

regular time schedule, withstand constructive
criticism, withstand assignments under pressure, or
cope with the stress of the workplace; nor does she
possess even the most primitive computer or cash
register skills;

- Adel clearly stated that Neece is "very ill"; and while
in six months or a year she "might"[4] have it; "you
don't win them all;"

- By her own account, again uncontroverted, Neece is
easily overwhelmed, which causes her to stay in bed
sometimes for two to three days at a time;

- Hartgrave stated as the hearing that supported
supervision, as called for by Dr. Rathkey, takes Neece
out of the competitive realm;

- At most times during the relevant period, Neece's GAF
ranged between 45 and 50 (serious symptoms OR any
serious impairment in social, occupational or school
functioning, e.g., unable to keep a job).

Finally, the court notes that just one week after the hearing in

which Adel outlined the significant hurdles Neece still faced in

order simply to maintain the activities of daily living, Neece

would no longer received funding from the OHP to pay for Adel's

guidance and support.

The court will credit the medical and testimonial evidence

set forth above as a matter of law.[5]  The court is convinced,

---

[4]     "Might" is not a basis to support the significant
responsibility entrusted to the ALJ in making disability
determinations.

[5]     Relying on <u>Bunnell</u>, 336 F.3d at 1115-1116, and <u>Connett
v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003), the Commissioner
argues that the court is not required to credit the evidence (set
forth above) as true once it finds that the ALJ failed to give
legally sufficient reasons for rejecting it.  The Commissioner
contends that the courts have flexibility in applying the

based on the record before it, that Neece is unable to function in the workplace due to her limitations.  A finding of disability under the Act is mandated and a remand for award of benefits is the only remedy.  This case is remanded for the sole purpose of permitting the Commissioner to award Neece the appropriate benefits.

**CONCLUSION**

Based on the foregoing, the decision of the Commissioner is REVERSED AND REMANDED for an award of benefits.  The Commissioner's Motion to Remand (doc. #14) is DENIED.  Accordingly, Neece's complaint (doc. #2) is DISMISSED and all other motions are DENIED as moot.

IT IS SO ORDERED

Dated this 11th day of May 2005.


   /s/Donald C. Ashmanskas
       Donald C. Ashmanskas
       United States Magistrate Judge

---

"crediting as true" rule.  The Commissioner is concerned that crediting the evidence as true here, without further record development and evaluation could result in an award of benefits for reasons other than disability.

The court disagrees.  For the reasons stated above, the medical and testimonial evidence likely is true and should be credited.  The various accounts of Neece's limitations, experienced during the relevant period, are supported by the record as a whole.  There is no evidence or even suggestion of malingering.  There are no discrepancies in the medical record nor does it contain conflicting medical evidence concerning Neece's medical conditions and impairments.